UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF COLUMBIA

Lisa A. Biron,                        )
     Plaintiff                     )
                                   )
                                   )
v.                                    )     Civil Action No. 21-3307 (CKK)
                                   )
                                   )
Lindsey George et al.,                )     OPPOSITION TO DEFENDANTS' MOTION TO
     Defendants                     )     DISMISS (Verified)
                                   )
                                   )

I.   Facts

   A. The Freedom of Information Act ("FOIA")/Privacy Act Violation

     The Defendants maintain a system of records known as the Electronic Law Library ("ELL") database.  The ELL is accessible bureau-wide to all federal Bureau of Prisons ("FBOP") inmates as a legal research database.  Among other things, the ELL contains written court decisions of all of the federal courts. Several written decisions in which Ms. Biron is either a plaintiff or a defendent are lawfully available for access through the ELL.  (Amend. Compl. at ¶ 8.)

     On May 5, 2021, in response to a motion filed by Ms. Biron, the United States District Court for the District of New Hampshire sealed its October 2, 2017 Order (ECF Doc 9) in Biron v. United States, no. 16-cv-108-PB, 2017 DNH 211, 2017 U.S. Dist. LEXIS 162038 (N.H.D. Oct. 2, 2017).  (Amend. Compl. at ¶ 9.)  The October 2017 Order, which disposed of a post-conviction motion, contained explicit and embarressing details from her criminal case[1] unavailable to the public by any other means except through this Order.  (Id. at ¶¶

---

[1] Ms. Biron's criminal case involved sex offenses.  This Court should take judicial notice of the fact that disclosure of details from offenses of this nature pose safety and securtiy risks in a prison setting.

1

13, 14, & 18.)  Ms. Biron moved to seal the Order because other inmates had read it on the ELL and were talking about it and arguing about her.  (Id. at ¶ 18.)

On May 27, 2021, Ms. Biron began the six-month fight[2] with the FBOP, as detailed in the Amended Complaint, to force the FBOP to remove the sealed Order from the ELL.  (Id. at ¶¶ 10-15.)  The sealed Order was not removed until on or about November 23, 2021.

B. The Exhaustion of Available Administrative Remedies

After months of emailing and verbally demanding the Order be removed from the ELL, on or about September 28, 2021, Ms. Biron began the administrative remedy ("AR") process by submitting an Informal Remedy Attempt which was responded to on October 21, 2021 and did not resolve the issue.  On October 26, 2021, Ms. Biron began the formal AR process at the institution level by filing the form known as the BP-9.  On November 16, 2021, the Warden responded stating "the seal order was approved and submitted[,]" and, therefore, the "Administrative Response is for informational purposes."  (BP-9 Response.)  But the Order was still accessible on the ELL.

On November 24, 2021, Ms. Biron submitted the form BP-10 to the Regional Director wherein she advised that the Order was finally removed on or about that same day, but that she would exhaust the AR process as a formality.  On January 6, 2022, she received the Regional Director's Response which was dated December 23, 2021.  The Response acknowledged the removal of the Order and concluded, therefore, that the Response was for "informational

---

2 While not spelled out in the Amended Complaint but reasonably inferable, Ms. Biron incurred pecuniary losses in her fight to force the removal of the sealed Order from the ELL.  These costs included photocopy fees, postage costs, typewriter ribbon purchases, and charges to print staff emails.

purposes."  (BP-10 Response.)

Nevertheless, on January 12, 2022, Ms. Biron submitted the form BP-11 to the Central Office.  On March 8, 2022, when she had not received a Receipt or Response, Ms. Biron sent an email to the institution's AR coordinator Associate Warden Vaught to inquire about the status of her AR request.  Vaught advised that the BP-11 was received in the Central Office on January 25, 2022 and rejected on February 18, 2022.  Nearly a month later, on March 11, 2022, Ms. Biron received a "Rejection Notice" and her AR papers from the Central Office.  The Notice claimed (falsely[3]) that the filing was rejected because it did not include a copy of the BP-9 form or the BP-9 Response.

On March 15, 2022, Ms. Biron resubmitted the BP-11 with new copies of the BP-9 form and BP-9 Response re-attached to the Central Office.  On April 11, 2022, Ms. Biron received a Receipt acknowledging the Central Office's acceptance of the AR together with a Notice advising that "additional time [(40 days plus a 20-day extension)] is needed to respond to the Central Office appeal . . . " making May 23, 2022 the new Response deadline.

  C. Relevant Procedural History

On November 17, 2021, the original Complaint was filed in the Superior Court of the District of Columbia.  On December 17, 2021, pursuant to 28 U.S.C. § 1442(a)(1), the Defendants removed this action to this Court.  On March 17, 2022 (entered March 24, 2022), Ms. Biron filed the operative Amended Complaint together with her Verified Notice of Service (entered on or about April 8, 2022) as proof that the Defendants were properly served on February

_____

3 All of the required forms were attached to the BP-11 form when it was submitted to the Central Office.  The staple holes where the BP-9 forms were attached are clearly visible on the remaining papers.

22 & 23, 2022, by mailing via Certified Mail Return Receipt Requested, a copy of the original Complaint and Summons to the Attorney General of the United States and to the United States Attorney's Office Civil Division/Process Clerk in Washington, D.C.

On April 11, 2022, Ms. Biron received a copy of the Defendants' Motion to Dismiss filed on April 1, 2022.  On April 18, 2022, Ms. Biron filed a motion requesting up to and including May 16, 2022 as the deadline to file this Opposition.  She now opposes the Defendants' Motion to Dismiss.

II.  Issues and Argument

In their Motion to Dismiss, the Defendants argue five reasons for dismissal of the Amended Complaint: 1) for want of jurisdiction; 2) for failure to effect service; 3) for failure to exhaust administrative remedies; 4) for failure to state a claim under the Privacy Act and FOIA; and 5) for suing individual defendants in their official capacities.

Two of these issues are moot points.  First, as detailed above, service has been timely effected and proof filed with the Court.  Second, the Amended Complaint clearly names the federal Bureau of Prisons as the defendant-Agency, thus, dismissal of the official capacity defendants is of no moment. The Defendants' remaining arguments do not warrant dismissal of the Amended Complaint.

A. This Court Has Subject Matter Jurisdiction

Defendants argue that the derivative jurisdiction doctrine deprives this Court of subject matter jurisdiction to adjudicate the Privacy Act and FOIA claims.  (Defts Mot. to Dis. at 4-5.)  The Defendants are incorrect for at least two reasons.  First, there is no binding precedent in the D.C. Circuit that has applied this doctrine to dismiss an action removed from the Superior Court.  Second, even if the doctrine is applied, this Court has jurisdiction

4

FOIA and the Privacy Act . . . ."  (Defts Mot. to Dis. at 4-5.)  In support
of this assertion, the Defendants cite to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C.
§ 552a(g)(5), and to a D.C. district court decision that makes the same er-
roneous assertion without any supporting analysis citing the same statutes.
The Defendants' assertion that federal courts have exclusive jurisdiciton
over FOIA and Privacy Act claims cannot be reconciled with long-settled
Supreme Court precedent.

"State and federal courts have concurrent jurisdiction of suits of a
civil nature arising under the Constitution and laws of the United States,
save in exceptional instances where the jurisdiction has been restricted by
Congress to the federal courts."  Grubb v. Public Utilities Commission, 281
U.S. 470, 476 (1930).  Unless Congress has explicitly given exclusive juris-
diction to the federal courts,  "rights, whether legal or equitable, acquired
under the laws of the United States, may be prosecuted in the United States
Courts or the State Courts. . . ."  Claflin v. Houseman, 93 U.S. 130, 136-
37 (1876).

In determining that federal courts do not have exclusive jurisdiction
over civil rights actions brought under Title VII of the Civil Rights Act,
42 U.S.C. § 2000e et seq., the Supreme Court examined the text of the statute.
See Yellow Freight Systems, Inc. v. Donnelly, 494 U.S. 820 (1990).  It looked
to the text of the statute because "[t]o give federal courts exclusive juris-
diction over a federal cause of action, Congress must, in an exercise of its
powers under the Supremacy Clause, affirmatively divest state courts of their
presumptively concurrent jurisdiction."  Id. at 823, citing Tafflin v. Levitt,
493 U.S. 455, 459-60 (1990).  Title VII provides that "[e]ach United States
district court . . . shall have jurisdiction of actions brought under this
subchapter."  Id., quoting 42 U.S.C. § 2000e-5(f)(3).  The Court explained

that "[u]nlike a number of statutes in which Congress unequivocally stated that the jurisdiction of the federal courts is exclusive, Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction." Id.

In the present case, there is no such exclusionary language in the FOIA or Privacy Act, either. The Defendants cite, but do not quote, 5 U.S.C. § 552(a)(4)(B) and § 552a(g)(5) as supporting their jurisdiction-stripping claim. But these provisions do not contain any such language. In fact, § 552(a)(4)(B) is wholly inapplicable to Defendants' argument because it applies to claims seeking orders for production of records being withheld by an agency, and this action does not seek the production of any records. And § 552a(g)(5), in relevant part, provides

> An action to enforce liability created under this section may be brought in the district court of the United States in the district in which the complaintant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy . . . .

5 U.S.C. § 552a(g)(5)(emphasis added). The provision does not mention "jurisdiction" let alone "exclusive jurisdiction" and uses the permissive word "may" instead of the word "shall" which was used in Title VII and, even so, did not give the federal courts exclusive jurisdiction. See Yellow Freight Systems, Inc., 494 U.S. at 823.

Moreover, in interpreting a different subsection of § 552a, the District of Columbia Court of Appeals held that "a court of competent jurisdiction" as that term is uded in Section 552a(b)(11) of the Privacy Act may include a state court. In re Tucker, 689 A.2d 1214, 1215, 1215 n.2 (D.C. 1997).

In sum, even if this Court applies the doctrine of jurisdiction, the Superior Court had jurisdiction over the claim, and, after removal, this Court does, too.

B. Available Administrative Remedies Are Exhausted

Ms. Biron has exhausted all of her available ARs. The Supreme Court has held that 42 U.S.C. § 1997e(a) requires an inmate to exhaust "available" remedies before filing suit. Ross v. Blake, 578 U.S. 632, 642 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." Id. (internal citation omitted). Moveover, exhaustion is not required—i.e., the remedy process is unavailable—"when prison administrators thwart inmates from taking advantage of a grievance process through machination . . . ." Id. at 645.

In the present case, as early as November 16, 2021, the Warden's Response declared the matter resolved and stated the "Response is for informational purposes." (BP-9 Response.) By the time the Regional Director's Response was signed, on December 23, 2021, the sealed Order had finally been removed. Accordingly, the Regional Director's Response stated that the Response was "for informational purposes." (BP-10 Response.) Clearly, at this point, the AR process was no longer "capable of use to obtain some relief for the action complained of." See Ross, 578 U.S. at 642. Moreover, when Ms. Biron, as a formality, filed the form BP-11 with the Central Office the first time, it contained all of the required forms despite the Central Office's claim to the contrary. The Central Office received the AR on January 25, 2022; had the AR been processed correctly, the Response would have been due on March 6, 2022, or with a 20-day extension (see 28 C.F.R. § 542.18), March 26, 2022. Ms. Biron posits that the Central Office's machinations—its wronful rejection—has thwarted the AR process and has made it unavailable under Ross. See id. at 645. In any event, Central Office's Response on the resubmission is due by May 23, 2022, but for all intents and purposes is a nullity.

For the foregoing reasons, this Court should find that Ms. Biron has exhausted her available administrative remedies.

C. Ms. Biron Has Stated A Claim

Ms. Biron has stated a plausible claim to relief based on the Defendants' violation of the Privacy Act.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the pleading stage, the Court accepts all facts in the Amended Complaint as true and draws all inferences in favor of Ms. Biron.  See id.

"To state a claim under the Privacy Act, a plaintiff must establish that 1) the agency violated a provision of the Act; 2) the violation was intentional or willful; and 3) the violation had an 'adverse effect' on the plaintiff in the form of actual damages."  Chichakli v. Tillerson, 882 F.3d 229, 233 (D.C. Cir. 2018).  "'Intentional of willful' means: Somewhat greater than gross negligence, or, an act committed without grounds for believing it to be lawful, or by flagrantly disregarding other' rights under the Act."  Maydak v. United States, 630 F.3d 166, 179 (D.C. Cir. 2010), quoting Waters v. Thornburgh, 888 F.2d 870, 875 (D.C. Cir. 1989).

In their Motion to Dismiss, the Defendants argue that Ms. Biron did not adequately allege "any facts that she suffered an adverse effect due to any disclosure of information or that Defendant acted intentionally or willfully." (Defts Mot. to Dis. at 9.)  The Defendants are incorrect.

1.  Adverse Effect

In her Amended Complaint, Ms. Biron alleged that she actively attempted to compel the Defendants to remove the sealed Order from the ELL for nearly six months and filed the original Complaint when it seemed apparent that the Defendants would not otherwise comply with the law.  (Amend. Compl. at ¶¶ 10-15.)  While she did not specify the amount of her "actual damages," it is permissible for the Court to draw the reasonable inference that she incur-

red costs for paper, a typewriter ribbon, photocopies, and postage to file this lawsuit. As an inmate, Ms. Biron makes 12¢ per hour at her prison job. This means that she must work 4.8 hours to buy a single stamp; approximately 139 hours for the Certified Mail fees to serve the Defendants. Moreover, Ms. Biron pleaded that the revelation of details from her case caused her embarrassment and discomfort. (Id. at ¶ 18.) Her financial losses coupled with her emotional distress are adverse effects in the form of actual damages. See Chichakli, 882 F.3d at 233.

2. Willful and Intentional

The sheer length of time the Defendants knowingly allowed a sealed court decision to remain on its ELL, accessible to other inmates in a prison setting, as detailed in her Amended Complaint, (¶¶ 10-15), adequately alleges that the Defendants' actions were willful and intentional. Clearly, the Defendants had "no grounds for believing [their continued publication of a sealed court Order, to the inmate population] to be lawful." See Maydak, 630 F.3d at 179. The Defendants "flagrantly disregarded [Ms. Biron's] rights under the Act." See id.

III. Conclusion

For the foregoing reasons, this Court should deny the Defendants' Motion to Dismiss, order them to answer the Amended Complaint, and grant such other relief as is deemed just and equitable.

Respectfully submitted,

4/25/2022
Date

Lisa Biron

Lisa A. Biron #12775-049
FCI Waseca
P.O. Box 1731
Waseca, MN 56093

<u>Verification</u>

I, Lisa Biron, declare, under the penalty of perjury, that the facts set forth in this Opposition to Defendants' Motion to Dismiss are true to the best of my knowledge and ability, and that this document was mailed to the Court on this date by depositing it in the inmate mail system postage paid.

4-25-2022
Date

Lisa Biron
Lisa Biron

<u>Certificate of Service</u>

I certify that a copy of this Opposition to Defendants' Motion to Dismiss was mailed to AUSA Stephanie Johnson on this date.

4/25/2022
Date

Lisa Biron
Lisa A. Biron